UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

PATRICK SANDIDGE,                      )
                                       )
     *Plaintiff*,                    )
                                       )
v.                                     )        No. 2:18-CV-00065-SKL
                                       )
COMMISSIONER OF SOCIAL SECURITY,       )
                                       )
     *Defendant*.                    )

## MEMORANDUM AND ORDER

Plaintiff Patrick Sandidge ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying him disability insurance benefits ("DIB"). Each party has moved for judgment [Docs. 15 & 18] and filed supporting briefs [Docs. 16 & 19]. This matter is now ripe. For the reasons stated below: (1) Plaintiff's motion for judgment on the pleadings [Doc. 15] will be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 18] will be **GRANTED**; and (3) the decision of the Commissioner will be **AFFIRMED**.

## I.    ADMINISTRATIVE PROCEEDINGS

According to the administrative record [Doc. 11 ("Tr.")], Plaintiff filed his application for DIB on June 29, 2015, alleging disability beginning June 26, 2015. Plaintiff's claims were denied initially and on reconsideration at the agency level. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on August 7, 2017. On August 29, 2017, the ALJ found Plaintiff was not under a disability as defined in the Social Security Act at any time between the alleged onset date through the date of the decision. The Appeals Council denied

Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action.[1]

## II.    FACTUAL BACKGROUND

### A.    Education and Employment Background

Plaintiff was born March 15, 1962, making him a "person closely approaching advanced age" when he filed his application, and a "person of advanced age" on the date of the ALJ's decision.  20 C.F.R. § 404.1563(d) & (e).  He graduated high school and is able to communicate in English.  He has past relevant work as a lab technician and a motor assembler.

### B.    Medical Records

In his June 2015 Disability Report, Plaintiff alleged disability due to severe arthritis in both shoulders with bone degeneration in the left shoulder, degenerative disc disease ("DDD") in his lower lumbar spine, right ankle bone spurs, and sleep apnea (Tr. 189).  While there is no need to summarize the medical records herein, the relevant records have been reviewed and will be discussed as necessary below.

### C.    Hearing Testimony

At the hearing before the ALJ on August 7, 2017, Plaintiff and a vocational expert ("VE") testified.  Plaintiff was represented by an attorney at the hearing.  The Court has carefully reviewed the transcript of the hearing (Tr. 71-90).

---

[1] Plaintiff also has pending a related case under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1132(e)(1) and 1132(f) ("ERISA"), in the Eastern District of Tennessee, Case No. 2:19-cv-44-TAV-MCLC, filed March 22, 2019.  This Memorandum and Order does not consider or address any issues pertaining to the ERISA case.

## III.    ELIGIBILITY AND THE ALJ'S FINDINGS

### A.    Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)).  A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)).  The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process.  20 C.F.R. § 404.1520(a)(4)(i-v).  The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

### B. The ALJ's Findings

The ALJ found Plaintiff met the insured status requirements through December 31, 2020. At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date. At step two, the ALJ found Plaintiff's shoulder osteoarthritis and lumbar DDD were severe impairments. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except Plaintiff was limited to only frequent postural activities and no overhead reaching with either upper extremity, and he was required to avoid concentrated exposure to hazards (Tr. 36). At step four, the ALJ found Plaintiff was capable of performing his past relevant work as a lab technician. In the Dictionary of Occupational Titles[2] ("DOT"), this job is classified as a skilled, light exertion job. The VE testified Plaintiff performed it at the medium exertional level. These findings led to the ALJ's determination that Plaintiff was

---

[2] *available at*: https://www.oalj.dol.gov/LIBDOT.HTM

not under a disability as defined in the Social Security Act at any time between the alleged onset date and the date of the decision.

## IV. ANALYSIS

Plaintiff asserts the ALJ's decision should be reversed and this matter remanded for further proceedings. He argues the ALJ's assessment of his RFC is not supported by substantial evidence, because the ALJ erred in his assessment of medical opinions from Plaintiff's treating physician, and in the ALJ's assessment of Plaintiff's "subjective allegations." [Doc. 16 at Page ID # 647]. He also argues the ALJ erred in finding him capable of performing the lab technician job at step four, because the record shows Plaintiff did not perform that job after 2003, and because it isn't clear Plaintiff actually was a "lab technician," as defined in the DOT. Last, Plaintiff makes a brief argument that the ALJ violated his duty to "fully and fairly develop the administrative record," because the ALJ "kept inquiring as to whether or not the Plaintiff was seeking a closed period of disability." [Doc. 16 at Page ID # 648-49]. The Court will address each issue in turn.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938));

*see also McClanahan*, 474 F.3d at 833. Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*,

125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

**B.      RFC Assessment**

Plaintiff argues the ALJ's assessment of his physical RFC is not supported by substantial evidence. In doing so, Plaintiff challenges the ALJ's decision to assign little weight to the opinions of Plaintiff's treating physician, Dr. Michael Odell. Plaintiff also challenges the ALJ's determination that Plaintiff's statements concerning his symptoms are not entirely consistent with the record.

A claimant's RFC is the most they can do despite their impairments. 20 C.F.R. § 404.1545(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). An ALJ is responsible for determining a claimant's RFC after reviewing all of the relevant evidence in the record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).

**1.      The ALJ's Consideration of Dr. Odell's Opinions**

In considering a claim of disability, "the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). A medical opinion from a treating source must be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic

techniques" and "not inconsistent with the other substantial evidence" in the record.[3] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citation omitted); 20 C.F.R. § 404.1527. While treating physicians' opinions are often afforded greater weight than those of examining physicians, "a treating source's opinion may be given little weight if it is unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (citing *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993)); *see also Gayheart*, 710 F.3d at 376 (noting that "two conditions" must be met for treating physician to automatically receive controlling weight (citing 20 C.F.R. § 404.1527(c)(2))).

When an ALJ "give[s] a treating source's opinion less than controlling weight, she must give 'good reasons' for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight." *Morr*, 616 F. App's at 211 (citations omitted). The stated reasons must be supported by the evidence in the record. *Gayheart*, 710 F.3d at 376 (citation omitted). If a treating-source opinion is not given controlling weight, the ALJ must weigh the opinion based on all relevant factors, including the nature and length of the treatment relationship, the specialization of the medical source, the consistency and supportability of the opinion, and other factors. *Id.* (citing 20 C.F.R.

---

[3] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852-57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies. *See* 20 C.F.R. § 404.1527. The current version of 20 C.F.R. § 404.1527 differs from the version in effect at the time of the ALJ's determination; however, the differences are not substantive and do not impact this memorandum and order. The Court cites to the current version herein.

§ 404.1527(c)(2)-(6)).  The ALJ is not, however, required to engage in a protracted discussion of the reasons.  *See, e.g., Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009) (ALJ's one-sentence justification for discounting treating physician's opinion "reach[ed] several of the factors that an ALJ must consider," and satisfied good reasons requirement. (citations omitted)).

Plaintiff's treating physician, Dr. Odell, offered two opinions in support of Plaintiff's claims: (1) an opinion that Plaintiff "is permanently disabled secondary to arthritis of shoulders," and "[i]s unable to work at this time," signed December 28, 2015 (Tr. 498); and (2) an opinion that Plaintiff "is unable to do any meaningful lifting with his arms," because he has "degenerative arthritis of both shoulders," and "severe limitation of motion and pain with all use of the shoulders," signed July 24, 2017 (Tr. 583).

Regarding these opinions, the ALJ wrote:

> Dr. Michael Odell's statements that the claimant is unable to do any meaningful lifting with [his] arms (Exhibit 16F) and that the claimant is permanently disabled and is unable to work (Exhibit 9F) are given little weight.  Dr. Odell's opinions are not supported by his own treatment records that routinely reflect no musculoskeletal findings.  Further, his opinions are not consistent with examinations by other treating and examining sources that show full strength and good range of motion of both upper extremities; and are not consistent with improvement in the claimant's pain with medication.  Further, Dr. Odell's conclusion that the claimant is permanently disabled and unable to work is dispositive of the case, and, as such, is a finding reserved to the Commissioner.

(Tr. 39).

Plaintiff concedes Dr. Odell's December 2015 opinion that Plaintiff is "permanently disabled and "unable to work" is on an issue reserved to the Commissioner.  [Doc. 16 at Page ID # 647].  As such, this opinion is "not entitled to any particular weight," and the ALJ was only required to "explain the consideration given" to the opinion.  *Johnson v. Comm'r of Soc. Sec.*, 535

F. App'x 498, 505 (6th Cir. 2013) (quoting *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492-93 (6th Cir. 2010) (other citation omitted)). The ALJ explained the consideration he gave Dr. Odell's December 2015 opinion; accordingly, the Court finds no error in the ALJ's assessment of that opinion.

This leaves Dr. Odell's July 2017 opinion that Plaintiff "is unable to do any meaningful lifting with his arms," because he has arthritis and "severe limitation of motion and pain with all use of the shoulders." (Tr. 583). Plaintiff argues the ALJ's assessment of this opinion is erroneous because, in fact, Dr Odell "was furnished copies of records from other physicians which show that the Plaintiff's condition was so severe that he required total shoulder replacements in both arms." [Doc. 16 at Page ID # 645]. Plaintiff further argues the ALJ erred by failing to discuss a February 2017 CT scan of Plaintiff's left shoulder "which showed severe degenerative changes" (Tr. 546), and a July 2015 note from Plaintiff's records at the Simpson Clinic, stating "Pt definitely needs to be on disability . . . severe shoulder degeneration as noted on MRI." (Tr. 440).

As the Commissioner argues, it is well-established that an ALJ's decision is "not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal quotation marks and citation omitted). Moreover, contrary to Plaintiff's argument, the ALJ did discuss both the MRI and the CT scan of Plaintiff's left shoulder, albeit not specifically in his discussion of Dr. Odell's opinion (Tr. 35-36). *See Gardner v. Colvin*, No. 1:12CV2498, 2014 WL 1116903, at *5 (N.D. Ohio Mar. 19, 2014) (approving the ALJ's assessment of treating physician's opinion after "reviewing the ALJ's entire decision"). The ALJ acknowledged that both imaging studies showed severe degenerative arthritis in the left shoulder, and that Plaintiff was scheduled

for surgery (Tr. 35-36, 39). The ALJ also very clearly explained what evidence in the record he found inconsistent with Dr. Odell's opinion, which justifies the ALJ's decision Dr. Odell's opinion controlling weight. This evidence includes: exams performed by providers at Tennessee Ortho on June 28 and September 6, 2016, which showed a 140 degree range of motion in Plaintiff's shoulders, and normal strength (Tr. 38, 535, 539); a consultative exam performed on September 14, 2015, which showed full range of motion in both shoulders and full strength (Tr. 38, 423); the fact that Plaintiff experienced some improvement in his symptoms with medication[4]—Plaintiff's doctors even reduced his pain medication as late as June 2017 (Tr. 38, 488, 551-553); findings from the state agency non-examining consultants that Plaintiff was able to lift and carry up to 20 pounds occasionally and 10 pounds frequently, with limited reaching overhead (Tr. 38, 98, 112-13); and exam results from June 2015 showing that despite his severe shoulder arthritis, Plaintiff had good range of motion in both shoulders (Tr. 37-38, 310).

The Court finds it is reasonable for the ALJ to conclude this evidence is inconsistent with the extreme limitations opined to by Dr. Odell. The record reflects the ALJ did not mischaracterize this evidence, and Plaintiff has not cited any significant treatment or events in Plaintiff's medical

---

[4] The ALJ found Plaintiff had "conservative" treatment of his shoulders (Tr. 38). Despite findings of severe shoulder degeneration as early as July 2015, Plaintiff did not have his first shoulder surgery until August 17, 2017. The Court notes surgery is not considered conservative treatment and that the first surgery was rescheduled three times. The record reflects that after the surgery was first scheduled, it was rescheduled once because Plaintiff had been discharged from his pain clinic for overtaking his pain medication (Tr. 532, 575), once because the surgeon was in a car accident, and once because Plaintiff's father died (Tr. 74). The ALJ acknowledged Plaintiff was scheduled for surgery, and the ALJ's finding that Plaintiff did experience some improvement in functioning with medication between July 2015 and August 2017 is borne out in the record (Tr. 38; 530 [Feb. 2017 - pain 5/10]; 541 [May 2016 - pain 4/10]; 548 [May 2017 – "quality of life is 50% better with medication" and "function has improved"]; 563 [Jan. 2017 – same as May 2017 and "able to do independent ADLs"]).

history which the ALJ overlooked.  The discussion of this evidence shows the ALJ considered the relevant evidence, as he is required to do, and determined Dr. Odell's opinion should not be given controlling weight.  Moreover, the ALJ provided good reasons for his decision to assign limited weight, including inconsistency with the record as a whole and lack of supportability.  The ALJ also acknowledged Dr Odell was a treating source (Tr. 36).

Based on a review of the record and the ALJ's explanations for the weight he assigned to Dr. Odell's opinions, the Court finds the ALJ followed the proper legal standards in weighing the opinions and further that the ALJ's determination to assign them little weight is supported by substantial evidence.  Plaintiff's motion will be denied in this regard.

### 2.  Subjective Symptoms

In challenging the ALJ's RFC assessment, Plaintiff also argues the ALJ failed to properly weigh Plaintiff's "subjective allegations." [Doc. 16 at Page ID # 647].  He acknowledges that ordinarily an ALJ's "credibility[5] determination is entitled to great deference," but he contends that in this case, the ALJ committed harmful error [*id.* at Page ID # 647-48].  Specifically, he points to the objective evidence showing severe arthritis in his shoulders and Dr. Odell's opinion that he cannot do any "meaningful lifting," contending these items are consistent with his testimony and other statements about his condition.

Social Security Ruling ("SSR") 16-3p provides guidance as to how the SSA evaluates a claimant's statements regarding the intensity, persistence, and limiting effects of symptoms in

---

[5] SSR 16-3p eliminated use of the term "credibility," effective March 2016, thereby superseding SSR 96-7p, which used the old terminology.  *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016).  It further clarified that subjective symptom evaluation is not an examination of a claimant's character.  The ALJ analyzed Plaintiff's subjective symptom reports pursuant to SSR 16-3p (Tr. 16).

disability claims. In this case, the ALJ found the evidence as a whole did not support of a finding of any limitations beyond light work, with only frequent postural movements, no overhead reaching, and avoiding concentrated exposure to hazards (Tr. 36). An examination of the ALJ's decision shows that he set forth and discussed the relevant evidence in a sufficiently thorough manner.

After describing Plaintiff's testimony and descriptions of his symptoms, the ALJ wrote:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> The objective evidence establishes impairments of the bilateral shoulders and lumbar spine with associated pain and symptoms that could reasonably be expected to restrict his ability to lift, carry and reach, particularly lifting up to 100 pounds as required in his last job as motor assembler. However, the totality of the evidence is not consistent with limitations in functioning that would preclude all work activity.

(Tr. 37). The ALJ then went on to list the normal examination findings regarding Plaintiff's shoulder strength and range of motion, Plaintiff's improvement in functioning with medication, and the findings of the state agency non-examining consultants (Tr. 37-38). The Court discussed this evidence in more detail and cited to its place in the record in connection with the treating physician issue, and will not do so again here. It suffices to repeat that the ALJ did not mischaracterize this evidence, and Plaintiff does not cite to any major events or notations in Plaintiff's medical history which the ALJ overlooked. Moreover, it is appropriate for the ALJ to

consider such evidence when evaluating a claimant's alleged symptoms. *See* 20 C.F.R. § 404.1529(c).

The ALJ also relied on Plaintiff's activities of daily living, finding:

> Despite pain, the claimant drives, watches television, reads, and visits family members. He walks for exercise, and he can walk five miles before having to stop and rest. The claimant's report that he can "always" follow instructions and that he completes tasks is not indicative of significant difficult with attention and concentration with pain. (Exhibit 10E and testimony).

(Tr. 39). As with the other evidence, the ALJ did not mischaracterize or overstate Plaintiff's activities of daily living, and it was proper for the ALJ to consider daily activities as one factor in the evaluation of a claimant's subjecting complaints. *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *see also* 20 C.F.R. § 404.1529.

For these reasons, the Court finds the ALJ properly evaluated Plaintiff's subjective complaints and alleged symptoms in a manner consisted with relevant SSA policies and regulations, including SSR 16-3p and 20 C.F.R. § 404.1529. Such evaluations are properly entrusted to the ALJ, *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003), and Plaintiff has failed to show any error in the ALJ's decision in this regard.

In sum, Plaintiff has failed to show any harmful error in the weight assigned to Dr. Odell's opinion or in the ALJ's consideration of Plaintiff's alleged symptoms. The Court finds the RFC is supported by substantial evidence in the record, including all of the medical and other evidence discussed above.

**C.      Step Four**

At step four, the ALJ found Plaintiff was capable of performing his past relevant work, which the ALJ classified as a lab technician, a job Plaintiff last performed from May 1990 until October 2003[6] (Tr. 204).  Plaintiff argues the ALJ misclassified his work, and furthermore the last time he performed that job was nearly fourteen years before the ALJ's decision, which is too remote to be considered relevant.  The Commissioner argues the ALJ was permitted to rely on the testimony of the VE regarding the classification of Plaintiff's past work, and that the applicable regulation, 20 C.F.R. § 404.1565, contemplates any work performed within 15 years can be considered past relevant work.  After very careful consideration of this issue, the Court has concluded the Commissioner's argument prevails in this case.

**1.      Classification of Past Work**

The VE testified Plaintiff's past relevant work included work as a lab technician (Tr. 87), which is the title Plaintiff listed in his Work History Report (Tr. 204).  The DOT classifies this as a light, skilled job, with the following duties:

> Conducts chemical and physical laboratory tests of solid materials, liquids, and gases, and analyzes test data for variety of purposes, such as research, product development, quality control, criminal investigation, and establishing standards, involving experimental, theoretical, or practical application of chemistry and related sciences: Sets up laboratory equipment and instrumentation required for tests, research, or process control.  Tests and analyzes products, such as food, drugs, fertilizers, plastics, paints, detergents, paper, petroleum, and cement, to determine strength, stability, purity, chemical content, and other characteristics.  Tests and analyzes materials and substances, such as ores, minerals, gases, soil, water,

---

[6] Plaintiff worked as a motor assembler from September 2004 until June 2015, when he stopped working altogether (Tr. 204).  The VE testified this job is generally performed at the medium exertional level and Plaintiff performed it at the heavy exertional level (Tr. 87).  Because the ALJ limited Plaintiff to a light work RFC, this job is not relevant to the step four analysis.

and pollutants. Documents results of tests and analyses. May prepare chemical solutions for use in processing materials, following standardized formulas or experimental procedures. May test and analyze radioactive and biological materials, applying knowledge of radiochemical procedures, emission spectrometry, and related techniques.

DOT code 022.261-010.

Plaintiff points out that the state agency reviewers classified Plaintiff's past work as an inker (Tr. 101, 115):

Compares color of printing ink with sample to ensure adherence to formula or customer specifications: Determines ink viscosity by timing flow from test cup and adds desired amount of solvent to meet viscosity requirements for kind of ink and application. Fills ink reservoirs in presses and adds more solvent to thin ink or uncovers reservoirs to allow evaporation of excess solvent during press run. May fill lubricating cups with oil and grease. May assist press operator to set up printing press.

DOT code 659.667-010.

Plaintiff's "lab technician" job was for a gift wrap printing company (Tr. 204). When asked to describe his lab technician job in his Work History Report, Plaintiff wrote: "formulated + matched ink colors, writing formulas for printing inks for giftwrap printing presses[,] also performed QC checking colors for matching," and "lifted pales of coloring match components to carry to lab." (Tr. 206). Based solely on the brief description on the Work History Report, Plaintiff's past work does seem more akin to an inker than a lab technician, as those terms are defined in the DOT. Nevertheless, as the Commissioner argues, Plaintiff, who was represented by counsel at the hearing, did not object to the classification, question the VE about what duties were required by a DOT lab technician, explain what his actual past work required, or argue there was a discrepancy between Plaintiff's past work and the DOT. Accordingly, the Court concludes the

16

ALJ did not err by relying on the VE's testimony concerning Plaintiff's past work. *See Davis-Byrd v. Comm'r of Soc. Sec.*, No. 11-cv-15314, 2013 WL 466199, at *12 (E.D. Mich. Jan. 10, 2013) (holding ALJ did not err in relying on VE's testimony concerning claimant's past work where claimant "failed to present any evidence suggesting that the ALJ or the VE had mischaracterized her past work, or that there was a discrepancy between her past work and the DOT," and finding claimant waived the issue (citing *Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008) ("Nothing in applicable Social Security regulations requires the ALJ to conduct his or her own investigation into the testimony of a VE to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge." (brackets omitted)); *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168-69 (6th Cir. 2009) ("The ALJ is under no obligation to investigate the VE's testimony beyond the inquiry mandated by SSR 00–4p. This obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT. The fact that plaintiff's counsel did not do so is not grounds for relief."))), report and recommendation adopted, No. 11-15314, 2013 WL 461256 (E.D. Mich. Feb. 7, 2013).

## 2. Remoteness in Time

In determining what constitutes past relevant work, the SSA usually only considers work performed in the past 15 years. "The 15-year guide is intended to insure that remote work experience is not currently applied," because a "gradual change occurs in most jobs so that after 15 years it is no longer realistic to expect that skills and abilities acquired in a job done then continue to apply." 20 C.F.R. § 404.1565(a). The 15-year period "is generally the 15 years prior to the time of adjudication at the initial, reconsideration or higher appellate level." SSR 82-62,

1982 WL 31386, at *2 (1982). Plaintiff last performed his lab technician job in October 2003, and the ALJ adjudicated Plaintiff's claim in August 2017; thus, Plaintiff last performed this job nearly fourteen years ago. The Commissioner contends the Court's inquiry ends there, because all the regulation requires is that the work be performed within the past 15 years. Plaintiff correctly argues the issue is not that simple. Plaintiff cites *Mowery v. Heckler*, 771 F.2d 966 (6th Cir. 1985), where the Sixth Circuit Court of Appeals reversed an ALJ's determination that a claimant was capable of performing his past work as a night watchman, which the claimant had last performed fourteen years prior to the ALJ's adjudication. The court noted the 15-year time limit, and reasoned, "[t]o find appellant can return to a job performed only one year more recent, considering the other evidence calling into question his ability to perform that job, is to place form before substance." *Id.* at 973.

Regretfully, the Commissioner does not address *Mowery* or cite to any authority on this issue other the regulation, 20 C.F.R. § 404.1565(a). Nevertheless, the Court finds *Mowery* distinguishable. The claimant, Mowery, only worked as a night watchman for about one year, and he was only able to perform the job with the assistance of his children because of "difficulties with his eye sight and hearing." *Mowery*, 771 F.2d at 969. In other words, there was substantial evidence "calling into question" Mowery's ability to perform the job at all. *Id.* at 973. In the case at bar, Plaintiff worked as a lab technician from May 1990 until October 2003 (Tr. 204), which is nearly fourteen years. Plaintiff has no mental impairments, nor does he have any other non-exertional/non-postural impairments (like hearing or eyesight) which might have changed his ability to perform this job since 2003.

Moreover, other courts have held that work performed fourteen years ago is not too remote to qualify as past relevant work. *See Nguyen v. Colvin*, No. 3:12-CV-02125-ST, 2014 WL 127071, at *14 (D. Ore. Jan. 13, 2014); *Billingsley v. Comm'r of Soc. Sec.*, No. 5:13CV126, 2014 WL 3054269, at *17 (N.D.W.V. July 3, 2014). Additionally, there is no proof in the record suggesting that the nature of Plaintiff's former occupation—whether it be called "inker" or "lab technician"— has changed significantly since 2003. Accordingly, the Court concludes Plaintiff has not shown the ALJ erred in relying on the lab technician job to determine Plaintiff does not qualify for disability benefits.[7]

In sum, to the extent Plaintiff argues the ALJ committed harmful error at step four, Plaintiff's motion will be denied.

### D. The Administrative Record

Plaintiff's final argument is that the ALJ violated his duty to fully and fairly develop the record. This argument is based on a series of comments the ALJ made at the hearing about Plaintiff's upcoming shoulder surgery and whether Plaintiff was seeking benefits for a defined period of time, i.e., a closed period of disability:

> ALJ:    Counselor, are you looking for a closed period?

---

[7] One final point on this issue bears mentioning, although the Court does not rely upon it. At the hearing, the VE also testified a person with Plaintiff's RFC could perform work as a mail sorter, checker or inspector, or small products assembler, and that these jobs existed in substantial numbers in the national and regional economy (Tr. 88-89). The ALJ did not include any step five findings in his decision. Neither party addresses this issue, and the Court declines to determine whether the undisputed existence of other jobs in the national economy available to someone with Plaintiff's RFC would render any error at step four harmless. In light of the above analysis, such a determination would be unnecessary. The Court notes, however, that where "remand would be an idle and useless formality," courts are not required to "covert judicial review of agency action into a ping-pong game." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (quoting *NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6 (1969) (plurality opinion)).

A:      No, I'm not.

ALJ:    Why not? . . . . The surgeries will, supposedly, cure his shoulder things, and his back, according to what I see in the radiology report, is minimal or mild at best.

. . . .

ALJ:    His recovery period is going to be less than a year, which it should be, for both shoulders. I have a problem with it. Why don't you come back when he's recovered, and see how he is? That's my answer to you. Now if you're . . . not looking for a closed period, that's fine. You don't have to. I just wondered if you were.

. . . .

A:      A closed period to end?

ALJ:    On the date of his surgery. It's up to you.

. . . .

A:      There's no way he'll be able to work for the next, at least, eight to—eight months to a year.

(Tr. 83-85). Plaintiff argues this exchange indicates the ALJ was willing to award a closed period of benefits from the alleged onset date through the date of the surgeries.

Although an ALJ "has a basic obligation to develop a full and fair record," the ALJ "is not required to act as the claimant's counsel or produce evidence for the claimant." *Dodson v. Comm'r of Soc. Sec.*, No. 1:12-CV-109, 2013 WL 4014715, at *13 (E.D. Tenn. Aug. 6, 2013) *(citing Born v. Sec'y of Health & Human Servs.,* 923 F.2d 1168, 1172 (6th Cir.1990); *Duncan v. Sec'y of Health & Human Servs.,* 801 F.2d 847, 856 (6th Cir.1986)). "An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Brooks v. Astrue*, No. 3:09-CV-432, 2011 WL 652839, at *8 (E.D. Tenn. Jan. 26, 2011) (quoting *Foster*, 279 F.3d at 355 (internal quotation marks omitted)), report and recommendation adopted, No. 3:09-CV-432,

2011 WL 652837 (E.D. Tenn. Feb. 14, 2011).  Further, because here Plaintiff was represented by counsel at the administrative level, "[t]he ALJ was entitled to assume that Plaintiff . . . was presenting her best evidence in favor of benefits." *Birdwell v. Barnhart*, No. 2:06-0063, 2008 WL 2414828, at *10 (M.D. Tenn. June 12, 2008) (citing *Delgado v. Comm'r of Soc. Sec.,* 30 F. App'x 542, 549 (6th Cir.2002); *Glen v. Sec'y of Health & Human Servs.,* 814 F.2d 387, 391 (7th Cir. 1987)).

Plaintiff does not specify what additional proof he believes the ALJ should have developed. It actually appears the ALJ was trying to get more information about Plaintiff's shoulders for the record.  Moreover, as the Commissioner argues, it is clear from the decision that the ALJ considered evidence covering the entire relevant time period and evaluated all of Plaintiff's complaints.  There was sufficient evidence in the record for the ALJ to properly consider Plaintiff's impairments, as discussed throughout this opinion.  As such, the Court concludes the ALJ did not violate his duty to develop the record by questioning Plaintiff about whether he was seeking a closed period of benefits.  Plaintiff's motion will be denied in this regard.

## V.    CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

(1) Plaintiff's motion for judgment on the pleadings [Doc. 15] is **DENIED**;

(2) the Commissioner's motion for summary judgment [Doc. 18] is **GRANTED**; and

(3) the Commissioner's decision denying benefits is **AFFIRMED**.

**SO ORDERED.**

**ENTER**:                              s/ *Susan K. Lee*
                                        SUSAN K. LEE
                                        UNITED STATES MAGISTRATE JUDGE